IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

STEVON L. LYONS,
    Plaintiff,

vs.                                                   Case No. 3:07cv86/LAC/EMT

OFFICER FIELDS, et al.,
    Defendants.
_____/

## REPORT AND RECOMMENDATION

       This case filed pursuant to 42 U.S.C. § 1983 is now before the court upon referral from the clerk. On June 6, 2007, Plaintiff, who is proceeding pro se and in forma pauperis in this action, filed a Second Amended Complaint (Doc. 14). Plaintiff alleges that Correctional Officers Fields, Brasseur and Andrus violated his Eighth Amendment rights by using excessive force as a means of cruel and unusual punishment (*see id*. at 6, 7). The court directed service of the complaint on Defendants. On January 29, 2008, Defendants filed a special report and supporting documents (Doc. 42). On July 10, 2008, Plaintiff filed an amended response to the special reports and supporting documents (Doc. 57). On August 5, 2008, the court entered an order advising the parties of the importance and ramifications of Rule 56 summary judgment consideration, informing the parties of the requirements of materials that may be considered on summary judgment, and informing the parties that the special reports would be construed as motions for summary judgment as of August 5, 2008, and taken under advisement on or after September 4, 2008 (Doc. 59). On September 4, 2008, Defendants filed a supplement to their motion for summary judgment (Doc. 64). Plaintiff did not file additional argument or Rule 56 materials.

       Upon review of the summary judgment record, it is the opinion of the undersigned that Defendants' motion for summary judgment should be denied.

I.     BACKGROUND

Plaintiff was incarcerated at Okaloosa County Department of Corrections (Jail) at the time of the events giving rise to this complaint. In Plaintiff's verified second amended complaint, he alleges that on January 31, 2007, at approximately 2:15 a.m., he was delivered from the "Shalimar booking room" to the Jail after being arrested for possession of cocaine and paraphernalia (Doc. 14 at 5). Plaintiff alleges that he was advised he would be strip searched, and Plaintiff states that he "was cool with that," so he began undressing and had his boxer shorts down around his ankles (*id.*). Plaintiff alleges that at that point Officer Fields and Officer Brasseur laughed at him, and Officer Fields told Plaintiff to turn around, bend over, and cough (*id.*). Plaintiff states that he told the officers "no" and said "you see that I don't have anything on me, so why should I do all that" (*id.*). Plaintiff then began to pull up his boxer shorts (*id.*). Next, Plaintiff alleges that Officer Fields grabbed Plaintiff's underwear and "snatched [him] off balance," which caused Plaintiff to "fall over on" Officer Fields' shoulder (*id.*). Plaintiff contends that when he fell, Officers Fields and Brasseur attacked him (*id.*). Specifically, Plaintiff alleges that Officers Fields and Brasseur banged his head against the wall, hit him, and kneed him in the back (*id.*). Plaintiff states that he started "screaming to the top of [his] lungs" (*id.*). Plaintiff told the Officers, "hold on . . . I slipped, I slipped," but Officers Fields and Brasseur continued to hit him and knee him in the back (*id.*). Next, Plaintiff alleges, Officer Brasseur called for help, and Officer Andrus rushed into the room and punched Plaintiff in the mouth three times and in the neck once (*id.*). Plaintiff states that he thought the officers were going to beat him to "half to death" (*id.* at 5–6). Finally, Plaintiff alleges that Sgt. Swanson came into the room and told the Officers to "let [him] up and give him a uniform to put on" (*id.* at 6). Plaintiff was booked approximately thirty minutes later (*id.*). He claims that his lip and head were swollen and that the photograph on his identification badge shows his swollen lip and head (*id.*). Plaintiff claims that the use of excessive force by Officers Fields, Brasseur, and Andrus constituted cruel and unusual punishment and violated his rights under the Eighth Amendment (*id.* at 6, 7). As relief, Plaintiff seeks monetary damages (*id.* at 7).

Officers Fields, Brasseur, and Andrus, in their motion for summary judgment, contend that they are entitled to summary judgment as a matter of law, and in support of their motion, Defendants have submitted the following: (1) an affidavit of the Jail's Deputy Director, Paul A. Lawson (Doc.

42, Ex. A at 2–6);[1] (2) a use of force report written by Officer Fields regarding this incident (Doc. 42, Ex. A at 7–8); (3) a use of force report written by Officer Andrus regarding this incident (Doc. 42, Ex. A at 9); (4) a use of force report written by Officer Brasseur regarding this incident (Doc. 42, Ex. A at 10–11); (5) a use of force report written by Officer Swanson regarding this incident (Doc. 42, Ex. A at 12–13); (6) Plaintiff's medical records consisting of the use of force examination conducted immediately after this incident on January 31, 2007, and Plaintiff's medical examination conducted upon his intake at the jail, prior to this incident (Doc. 42, Ex. A at 14– 16); (7) a copy of the Jail's policy regarding the use of force which was effective on June 21, 2007 (Doc. 42, Ex. A at 17–21); (8) a copy of Florida's Model Jail Standards regarding the use of force (Doc. 42, Ex. A at 22); (9) a disciplinary hearing officer report in which Plaintiff was charged with battery on a member of the detention staff and resisting an officer with violence as a result of this incident (Doc. 42, Ex. A at 23); (10) an inmate disciplinary report (DR) investigation report (Doc. 42, Ex. A at 24); (11) duplicate copies of the medical records described in subsection six (6), *supra* (Doc. 42, Ex. A at 25–29); (11) an affidavit of Officer Fields (Doc. 42, Ex. B); (12) an affidavit of Officer Brasseur (Doc. 42, Ex. C); (13) an affidavit of Officer Andrus (Doc. 42, Ex. D); (14) an affidavit of Officer Swanson (Doc. 42, Ex. E); (15) additional medical and dental records of Plaintiff from January of 2007 through September of 2007 (Doc. 64, Ex. F at 2–38; Ex. G); and (16) copies of Plaintiff's booking sheet and booking photos that were taken after this incident (Doc. 64, Ex. H).

In his supporting affidavit, Officer Fields states that Plaintiff refused to continue the strip search and that he pulled Plaintiff's boxer shorts down in an effort to continue the mandatory strip search (Doc. 42, Ex. B at 3) Officer Fields alleges that Plaintiff deliberately struck him in the left forearm and that he reacted to Plaintiff's aggressive behavior by grasping Plaintiff's left arm in an attempt to turn Plaintiff away from him (*id.*). Officer Fields claims that Plaintiff grabbed him by the throat with his right hand, a struggle ensued, and Officer Brasseur called for assistance (*id.*). Officer Andrus, Sgt. Swanson, and an officer from the Crestview Police Department (CPD) responded to Officer Brasseur's call for assistance (*id.*, Ex. B at 4). After the other officers arrived, Plaintiff continued to resist the officers, despite the fact that the officers were using physical force and verbal

---

[1] The Exhibits submitted by Defendants are identified in this Report and Recommendation by the page numbers assigned in the CM/ECF docketing system.

Case No.: 3:07cv86/LAC/EMT

orders in an attempt to restrain Plaintiff (*id.*).  After the altercation ended, Officers Andrus and Fields took Plaintiff to the medical screening area for a standard intake examination (*id.*).  During the medical examination, Officer Fields alleges that Plaintiff made numerous threats to Officer Andrus (*id.*).  After the examination, Plaintiff repeatedly stated, "all this [be]cause I slipped, I slipped man, I slipped" (*id.*).  Officers Fields and Andrus took Plaintiff to his assigned cell, and Officer Fields prepared a use of force report (*id.*).

In his supporting affidavit, Officer Brasseur states that he assisted Officer Fields with a strip search of Plaintiff (Doc. 42, Ex. C at 3).  Plaintiff was in the process of removing his underwear when he indicated that "he had done this before and did not think it had to be done again, and he started to put his underwear back on" (*id.*).  Officer Fields reached for the underwear to stop Plaintiff from pulling up his underwear (*id.*).  Plaintiff became aggressive, and Officers Fields and Brasseur tried to restrain him (*id.*).  Next, Officer Brasseur claims, Plaintiff grabbed Officer Fields' forearm (*id.*).  Officer Brasseur called for assistance, and Officer Andrus, Sgt. Swanson, and a CPD officer arrived (*id.*).  Officer Brasseur put restraints on Plaintiff, and restraints were removed when a nurse came to examine him (*id.*).  The strip search was completed, Plaintiff put on his inmate uniform, and he was placed in a holding cell (*id.*).  Officer Brasseur prepared a use of force report regarding this incident (Doc. 42, Ex. C at 4).

In his supporting affidavit, Officer Andrus states that he heard "hollering coming from the ACR bathroom" (Doc. 42, Ex. D at 2).  Officer Andrus ran toward the bathroom and heard Officer Fields calling for assistance (*id.*).  When Officer Andrus arrived at the bathroom, he observed Officers Fields and Brasseur attempting to gain control of Plaintiff (*id.*).  Plaintiff was naked and was attempting to break free from Officers Fields and Brasseur (*id.*).  Officer Andrus attempted to grab Plaintiff's left arm (*id.*).  Plaintiff then turned sideways, toward Officer Andrus, and kicked the outside of Officer Andrus' right knee (*id.*).  Officer Andrus released Plaintiff's arm and pushed Plaintiff's head downward toward his chest, holding Plaintiff in this position while Officers Fields and Brasseur restrained him with handcuffs (*id.*)  Officer Andrus prepared a use of force report regarding this incident (Doc. 42, Ex. D at 3).

In his supporting affidavit, Officer Swanson states that he heard a call for assistance, and he responded to the restroom where strip searches are conducted with an "M–26" taser (Doc. 42, Ex.

E at 2). Officer Swanson observed Officers Andrus, Fields, and Brasseur physically struggling to put Plaintiff on the floor (Doc. 42, Ex. E at 3). Officer Swanson alleges that Plaintiff was actively resisting the officers' efforts to restrain him by tensing his arms and verbally refusing orders to cease his activity so that he could be restrained (*id.*). Officer Swanson yelled "taser, taser," and after the taser warning, the other officers took Plaintiff from a standing position to a sitting position (*id.*). Officer Swanson never used the taser on Plaintiff (*id.*). Officer Swanson ordered Plaintiff to place his hands behind his back and Plaintiff complied, at which time Officers Brasseur and Fields restrained Plaintiff (*id.*). Nurse Monaghan conducted a "post-use of force examination" in which Plaintiff denied any injuries (*id.*). Plaintiff dressed into a jail uniform without any further incident (*id.*). Officer Swanson prepared a use of force reporting regarding this incident (*id.*).

In response to the materials submitted by Defendants, Plaintiff filed an "amended answer" to Defendants' motion for summary judgment (Doc. 57), essentially restating the facts set forth in his second amended complaint. Plaintiff has not supplemented his response with any additional evidence.

II.     Legal Standards

    A.     Summary Judgment Standard

In order to prevail on their motion for summary judgment, Defendants must show that Plaintiff has no evidence to support his case or present affirmative evidence that Plaintiff will be unable to prove his case at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2553–54, 91 L. Ed. 2d 265 (1986). If Defendants successfully negate an essential element of Plaintiff's case, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "[T]he substantive law will identify which facts are material" and which are irrelevant. Anderson, 477 U.S. at 248. An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *See id.*; *accord* Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992).

When assessing the sufficiency of the evidence in favor of the nonmoving party, the court must view all the evidence, and all factual inferences reasonably drawn from the evidence, "in the light most favorable to the non-moving party." Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust Co. v. Fidelity and Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)). The court is not obliged, however, to deny summary judgment for the moving party when the evidence favoring the nonmoving party is "merely colorable or is not significantly probative." Anderson, 477 U.S. at 249–50. "A mere 'scintilla' of evidence supporting the . . . [nonmoving] party's position will not suffice" to demonstrate a material issue of genuine fact that precludes summary judgment. Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (quoting Anderson, 477 U.S. at 252, 106 S. Ct. at 2512). Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence or conclusory allegations is insufficient. Celotex Corp., 477 U. S. at 324 (quoting Fed. R. Civ. P. 56(e)). Plaintiff must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Id.*; Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997); Hammer v. Slater, 20 F.3d 1137 (11th Cir. 1994). The Eleventh Circuit has consistently held that conclusory allegations without specific supporting facts have no probative value, and are legally insufficient to defeat summary judgment. *See* Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000); Sammons v. Taylor, 967 F.2d 1533, 1544–45 & n.5 (11th Cir. 1992).

      B.      Cruel and Unusual Punishment

Different types of claims may arise under the cruel and unusual punishment clause of the Eighth Amendment, including claims for excessive force, claims for deliberate indifference to serious medical needs, and "distinct claims for basic cruel and unusual punishment," and courts apply different tests to each. Danley v. Allen, 540 F.3d 1298, 1306 (11th Cir. 2008). *See, e.g.*, Skrtich v. Thornton, 280 F.3d 1295, 1300–01 (11th Cir. 2002) (applying test for Eighth Amendment excessive force claim); Kelley v. Hicks, 400 F.3d 1282, 1284 (11th Cir. 2005) (applying test for

Eighth Amendment deliberate indifference to medical needs claim); Hope v. Pelzer, 240 F.3d 975, 978 & n.7 (11th Cir. 2001) (applying test for a basic cruel and unusual punishment claim under the Eighth Amendment), *rev'd on other grounds*, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002). Pretrial detainees, however, are not protected by the Eighth Amendment, but they can bring the same claims under the Fourteenth Amendment. Danley, 540 F.3d at 1306 (citing Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005) ("[I]t makes no difference whether [the plaintiff] was a pretrial detainee or a convicted prisoner because 'the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving . . . pretrial detainees.'" (omission in original) (citation omitted))). Thus, Plaintiff's claims are properly analyzed under the decisional law of the Eighth Amendment's Cruel and Unusual Punishment Clause, while being governed by the Fourteenth Amendment's Due Process Clause. *See* Bozeman, 422 F.3d at 1271. And, with regard to Plaintiff's claims in the instant case, a recent decision of the Eleventh Circuit is instructive. In Danley, the court stated:

> Whether a jailer's use of force is excessive, and thus violates the inmate's Fourteenth Amendment right to be free from cruel and unusual punishment, depends on whether the jailer's act "shocks the conscience," Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007), and it necessarily will if the force " 'was applied . . . maliciously and sadistically for the very purpose of causing harm.' " *Id.* (quoting Whitley v. Albers, 475 U.S. 312, 320–21, 106 S. Ct. 1078, 1085, 89 L. Ed. 2d 251 (1986)). To evaluate whether actions shock the conscience, we consider the following factors: (1) the need for force; (2) the relationship between that need and the amount of force used; and (3) the extent of the resulting injury. Whitley, 475 U.S. at 321, 106 S. Ct. at 1085. In addition to those three factors we consider as fourth and fifth factors "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible official on the basis of facts known to them, and any efforts made to temper the severity of a forceful response." *Id.* When we consider whether the jailers' use of force was excessive, we must "give a wide range of deference to prison officials acting to preserve discipline and security." Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990).

Danley, 540 F.3d at 1307.

In determining whether an application of force was applied maliciously and sadistically to cause harm, the Whitley factors are considered, and from consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a

knowing willingness that it occur." Whitley, 475 U.S. at 321, 106 S. Ct. 1078 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2nd Cir. 1973)).  That officials followed prison regulations in administering force or restraint provides evidence that they acted in good faith and not to inflict pain.  Campbell v. Sikes, 169 F.3d 1353, 1376 (11th Cir. 1999) (citation omitted).  Thus, as summarized in Campbell, "[p]recedent dictates that [the determination whether defendants acted maliciously and sadistically for the very purpose of causing harm] be guided by the five Hudson/Whitley factors outlined above, by deference to prison officials' punitive judgments, and by this Court's previous holdings that compliance with prison policies evidences officials' good faith." *Id.*  The Court in Whitley narrowed the precise inquiry applicable when deciding whether officials are entitled to judgment as a matter of law:

> courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives.  Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury.

Whitley, 475 U.S. at 322, 106 S. Ct. 1085.

    C.    Qualified Immunity

The doctrine of qualified immunity is a guarantee of fair warning.  McElligott v. Foley, 182 F.3d 1248, 1260 (11th Cir. 1999).  It shields government officials from individual capacity suits against them for acts that do not violate a clearly established statutory or constitutional right of which a reasonable person would have known given the circumstances and information possessed by the official at the time of the conduct.  Hope, 536 U.S. at 739; Conn v. Gabbert, 526 U.S. 286, 290, 119 S. Ct. 1292, 1295, 143 L. Ed. 2d 399 (1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)); Powell v. Ga. Dep't of Human Resources, 114 F.3d 1074, 1077 (11th Cir. 1998).  Qualified immunity seeks to ensure that individuals can reasonably anticipate when their conduct may give rise to liability, and hence, liability only attaches if the contours of the right allegedly violated are sufficiently clear that a reasonable person would understand that what he is doing violates that right.  McElligott, 182 F.3d at 1260 (*citing* United States v. Lanier, 520 U.S. 259, 270, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997)).

In order to receive qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lee v.

Ferraro, 284 F.3d 1188, 1194 (internal quotation marks omitted). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.* at 1194. The Supreme Court has established a two-part test for evaluating a claim of qualified immunity. First, the trial court must determine whether a constitutional right has been violated on the facts alleged. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). The court must assess the facts in a light most favorable to the party asserting the injury. *Id.*

Second, if a violation has been established, the court must determine whether the right was "clearly established." *Id.* The very action in question need not have been held unlawful for an official to lose the protection of qualified immunity. Hope, 536 U.S. 739; Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). Officials can still be on notice that their conduct violates established law even in novel factual circumstances, and there is no requirement that previous cases be "fundamentally" or even "materially" similar. Hope, 536 U.S. at 739. Instead, the law merely must give Defendants "fair warning" that their actions are unconstitutional. *Id.* In light of pre-existing law, the unlawfulness must be apparent. *Id.*; Creighton, 483 U.S. at 640. "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Wilson v. Strong, 156 F.3d 1131, 1135 (11th Cir. 1998) (quoting Jenkins v. Talladega City Bd. of Educ., 115 F.3d 821, 826 n.4 (11th Cir. 1997)).

In cases where improper motive is an element of the constitutional claim, a defendant is entitled to qualified immunity only when, among other things, "the record indisputably establishes that the defendant in fact was motivated, at least in part, by lawful considerations." Stanley v. City of Dalton, Ga., 219 F.3d 1280, 1296 (11th Cir. 2000); *see also* Foy v. Holston, 94 F.3d 1528, 1535 (11th Cir. 1996) ("the record makes it clear that Defendants' acts were actually motivated by lawful considerations without which they would not have acted.").

In the Eleventh Circuit, a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force "maliciously and sadistically to cause harm" are constitutional violations clearly established in the Supreme Court decisions in Hudson and Whitley. *See* Johnson v. Breeden, 280 F.3d 1308 (11th Cir. 2002). "There

is simply no room for a qualified immunity defense when the plaintiff alleges such a violation." *Id.* The only question, then is whether the plaintiff has alleged facts sufficient to survive a motion to dismiss or a motion for summary judgment. Skrtich, 280 F.3d at 1301. If plaintiff establishes an Eighth Amendment excessive force claim, the qualified immunity inquiry ends. *Id.*

III.   CONCLUSIONS OF LAW REGARDING MATERIAL FACTS

The following analysis demonstrates that Plaintiff's verified second amended complaint establishes that genuine issues of material fact exist as to: (1) whether Officers Fields and Brasseur beat Plaintiff's head against a wall and hit, kneed and beat Plaintiff without any penological justification; (2) whether Officer Andrus punched Plaintiff in the mouth three (3) times and punched Plaintiff once in the neck without any penological justification; (3) whether Plaintiff grabbed Officer Fields' throat; and (4) whether Plaintiff kicked Officer Andrus in the right knee. The facts stated in Plaintiff's verified pleadings, viewed in light most favorable to him, are sufficient to enable a reasonable jury to conclude that Defendants violated his Eighth Amendment rights.

The following facts are undisputed. On January 31, 2007, at approximately 2:15 a.m., Plaintiff arrived at the jail to be booked on charged of possession of cocaine and drug paraphernalia. Officers Fields and Brasseur attempted to conduct a mandatory strip search of Plaintiff due to his charges. Plaintiff started to undress but then refused to continue the strip search and began pulling up his boxer shorts. An altercation ensued. Officers Fields and Brasseur called for assistance, and Officer Andrus arrived to assist Officers Fields and Brasseur.

The parties sharply dispute how the altercation began and the degree of force used by the officers. Plaintiff alleges that the altercation began when he fell on Officer Fields' shoulder after Officer Fields pulled Plaintiff's boxer shorts and caused him to lose his balance; however, Officers Fields and Brasseur claim that Plaintiff intentionally struck Officer Fields in the left arm. Officer Fields also contends that Plaintiff grabbed his throat. Plaintiff claims that Officers Fields and Brasseur attacked him by banging his head against the wall and kneeing him in the back. Plaintiff states that Officers Fields and Brasseur continued to hit him and knee him in the back after he explained to the officers that he grabbed Officer Fields' arm by accident because he slipped. While Plaintiff alleges that Officer Andrus rushed into the room and punched Plaintiff in the mouth three (3) times and also punched Plaintiff once in the neck, Officer Andrus states that Plaintiff kicked him

in the right knee. Plaintiff alleges that the force used by the officers was so severe that he thought Defendants were going to beat him to death, while Defendants contend that Plaintiff was actively resisting, therefore any force they used on Plaintiff was justifiable. These disputed facts are critical to Plaintiff's Eighth Amendment excessive force claims against Defendants.

The undersigned concludes that viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could find that Defendants applied force maliciously and sadistically for the very purpose of causing harm. In reaching this conclusion, the court has considered the Whitley factors, including whether the application of force was necessary. Based upon Plaintiff's version of the facts, no force was necessary. Although Plaintiff admits he refused to continue with the strip search, he alleges that he refused in a nonviolent manner by advising the officers that he would not continue and by attempting to pull up his boxer shorts. While Plaintiff may ultimately have been required to submit to the search, and some force or restraint may have been necessary to accomplish the search, Plaintiff's facts suggest that immediately upon advising the officers that he would not continue with the search, Officer Fields grabbed Plaintiff's boxer shorts and forced him off-balance. In other words, Plaintiff's facts clarify that no verbal warning was given and no other method of obtaining Plaintiff's compliance with the strip search was attempted; instead, Plaintiff was essentially yanked off his feet by Officer Fields as soon as he refused to continue with the search. Moreover, after Plaintiff fell as a result of Officer Fields' conduct, he alleges that he was attacked repeatedly, but he was not resisting or doing anything else to justify the officers' use of a substantial amount of force, including the banging of Plaintiff's head against a wall. While the attack did not appear to have resulted in serious injury to Plaintiff, this is but one of the Whitley factors. The court has also considered, that according to all parties' versions of the events, no other inmates were threatened. Thus, viewing the evidence in the light most favorable to Plaintiff, the evidence "support[s] a reliable inference of wantonness in the infliction of pain," Whitley, 475 U.S. at 322, 106 S. Ct. 1085, and it establishes a claim of excessive force under the Eighth Amendment (*see also* Skrtich, 280 F.3d at 1302 ("the force administered by each defendant in [a] collective beating" should not "be analyzed separately to determine which of the defendants' blows, if any, used excessive force")).

In conclusion, genuine issues of material fact exist with regard to Plaintiff's Eighth Amendment claims against Defendants Fields, Brasseur and Andrus.  Given Plaintiff's version of the facts, a reasonable jury could conclude that Defendants violated Plaintiff's rights under the Eighth Amendment.  Therefore, Defendants are not entitled to summary judgment.  Moreover, because Plaintiff has established an Eighth Amendment excessive force claim, Defendants are not entitled to qualified immunity.  *See* Skrtich, 280 F.3d at 1302.

Accordingly, it is respectfully **RECOMMENDED**:

1.  That Defendants' motion for summary judgment (Docs. 42, 64) be **DENIED**.
2.  That this matter be referred to the undersigned for further pre-trial proceedings.

At Pensacola, Florida this 13th day of January 2009.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.**  *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**